IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SERGIO VEGA SOTO                        :
                                        :
              Plaintiff                 :        CIVIL ACTION
        vs.                             :
                                        :        NO. 08-CV-1907
BANK OF LANCASTER COUNTY,               :
a/k/a BLC BANK, N.A.                    :
              Defendant                 :

**MEMORANDUM OPINION AND ORDER**

GOLDEN, J.                                                          MARCH 30, 2010

      This is a purported class action brought on behalf of all customers of the Bank of Lancaster County (BLC) who allege that BLC's Overdraft Privilege Service ("OPS"), as it is applied to ATM and Debit Card transactions, results in violations of the National Bank Act, the Truth in Lending Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  Presently before the Court is BLC's Motion to Dismiss for failure to state a claim.[1]  The Court heard oral argument on this Motion.   For the reasons that follow, the Motion is granted.

      In construing a motion to dismiss for failure to state a claim, the Court must accept all allegations in the Complaint as true.  The Complaint alleges that a BLC customer is automatically charged a fee of $35 every time BLC pays for an overdrawn check without first giving any notice to the customer that his account has insufficient funds.  As a result of the application of the OPS to Plaintiff Soto's account, Soto was assessed $560 in "paid item fees"

---

[1] Although the Plaintiff has moved for class action status, the parties have agreed to postpone any class discovery on the class action issue until after the Court rules on BLC's Motion to Dismiss.

between September 11, 2007 and September 25, 2007.

Plaintiff's first cause of action alleges that BLC violated the National Bank Act ("NBA"), 12 U.S.C. § 85, by charging interest at a rate in excess of that permitted by Pennsylvania law. Complaint at ¶¶ 32-35.

Interest is defined by the Office of the Comptroller of the Currency ("OCC"), which is the exclusive supervisory agency of national banks, to include:

> any payment compensating a creditor or prospective creditor for an extension of credit, making available a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees.

12 C.F.R. § 7.4001(a).

Plaintiff alleges that BLC charged him NSF fees only in relation to his deposit account. Complaint at ¶¶18-22. The Supreme Court has held that the OCC's interpretation of its regulations is entitled to substantial deference. Smiley v. CitiBank, N.A., 517 U.S. 735, 739 (1996). According to the OCC, the overhead draft fee is not interest in connection with credit extension as long as the bank charges the fee without regard to whether it pays the item creating the overdraft. 66 Fed.Reg. 34784 et seq. at 34786-87 (July 2, 2001). ("Fees that a bank charges for its deposit account services-- including overdraft and returned check charges-- are not covered by the term 'NSF fees' as that term is used in § 7.4001(a)"). Rather, the fee is a deposit account service charge arising from the terms of the depository agreement.

Although the Third Circuit has not ruled on this issue, all courts which have addressed the issue have concluded that overdraft fees are not interest. See In re Washington

Mutual Overdraft Protection Litig., 2004 WL 5046210 (C.D.Cal. April 26, 2004), aff'd in part, rev'd in part on other grounds, 201 Fed.Appx. 409 (9th Cir. 2006); Nicholas v. Deposit Guar.Nat. Bank, 182 F.R.D. 226, 231 (S.D. Miss. 1998); Video Trax, Inc. v. Nations Bank, N.A., 33 F.Supp.2d 1041, 1050 (S.D. Fla. 1998); Terrell v. Hancock Bank, 7 F.Supp. 2d 812, 816 (S.D. Miss. 1998).

Plaintiff attempts to distinguish these cases by noting that he alleges that BFC charged an overdraft fee only when an item was paid, and did not charge a fee when an item was not paid. Complaint at ¶¶ 11, 14. These allegations are contradicted by the plain terms of Plaintiff's Deposit Account Agreement, which provided that BLC had the right to charge an overdraft fee for each overdraft item presented regardless of whether BLC paid it or returned it. Exhibit B to Defendant's Motion to Dismiss at 1.[2] In addition, the Overdraft Privilege Service Policy that accompanied the September 5, 2007 notice letter regarding the application of BLC's overdraft privilege to Plaintiff's account states that "a fee will be charged for every non-sufficient fund item **regardless of whether we pay it or return it.**" Exhibit A to Defendant's Reply Brief. (emphasis added).

In short, NSF fees arising from deposit accounts <u>do not constitute interest</u>. Since Plaintiff's account was not a loan account but a deposit account, the disputed NSF fees were not "interest" and Plaintiff fails to state a claim under the National Bank Act.

Plaintiff next contends that BLC violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1642, by: 1) failing to provide Plaintiff with disclosures regarding the true cost of using

---

[2] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben.Guar.Corp. v. White Consol.Inds., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

3

the OPS; 2) adding OPS to Plaintiff's ATM/credit card because, according to Plaintiff, the addition of OPS constitutes a credit feature which violates the TILA's prohibition against the use of unsolicited credit cards and 3) offsetting OPS fees assessed in connection with ATM and debit card transactions against the account of Plaintiff, thereby violating "TILA's prohibition of credit card issuers offsetting cardholders' indebtedness against funds held on deposit with card issuers in the absence of the cardholders' affirmative consent." Complaint at ¶¶ 39, 41-42. [3]

In the first instance, nearly identical claims have already been rejected by the United States District Court for the Central District of California in <u>In re Washington Mutual Overdraft Protection Litg.</u>, 539 F.Supp. 2d 1136, 1146 (C.D. Cal. 2008). The Official Staff Commentary of the Federal Reserve Board (the "Board") specifically states that credit is not extended by the addition of discretionary OPS features to debit cards. 12 C.F.R. Pt. 226 Supp. I at cmt. 226.2(a)(15)-2.ii.A. In an amicus brief filed in the Court of Appeals for the Ninth Circuit in the <u>Washington Mutual</u> litigation, the Board summarizes the applicable legal principles as follows:

> The [Official Staff Commentary] provides explicitly that a credit card 'does not include...a check-guarantee or debit card with no credit feature or agreement, even if the creditor occasionally honors an inadvertent overdraft.' Comment 226.2(a)(15)-(2)(ii). **Plaintiffs'-Appellants' arguments to the contrary notwithstanding, the Board does not consider automated overdraft programs such as the one at issue here to be distinct from programs in which a financial institution occasionally honors an inadvertent overdraft without an automated program.** The Board was fully aware of this aspect of overdraft programs, *see* 70 Fed.Reg. 29,583 ('[s]ome institutions extend the overdraft service to non-check transactions, for example, withdrawal requests made at automated teller machines [or] purchases made using a debit card....'), and

---

[3] At oral argument, Plaintiff withdrew the first claim under the TILA which is the subject of paragraph 39 of the Complaint. <u>See</u> Plaintiff's Sur- Reply Memorandum of Law in Further Response to Defendant's Supplemental Brief in Further Support of Motion to Dismiss the Complaint at 4.

> determined nonetheless that these programs are properly disclosed under Regulation DD rather than Regulation Z...**Consistent with this interpretation, the Board has also not applied Regulation Z's rules regarding the issuance of credit cards to debit (e.g. ATM) cards unless the debit card has a 'credit feature' that goes beyond credit associated with overdraft protection.** *See* 12 C.F.R. § 205.12(a)(2). **For those debit cards for which the only credit involves overdraft protection, the Board has determined that Regulation E, its rule implementing EFTA [Electronic Funds Transfer Act], rather than Regulation Z, applies to card issuance even when there is a preexisting agreement.** *See* 12 C.F.R. § 205.12(a)(1)(ii).

Amicus Brief of Board at 9-10 attached to Defendant's Motion to Dismiss as Exhibit E (emphasis added). The Board's interpretation of TILA is entitled to a large degree of deference. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980). Specifically, the Supreme Court stated, "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the [TILA] or Regulation should be dispositive." Id.

Even more significant, however, is that on November 12, 2009, the Board amended Regulation E, the regulation which implements the EFTA. The Rule limits "the ability of a financial institution to assess an overdraft fee for paying automated teller machine (ATM) and one-time debit card transactions that overdraw a consumer's account, unless the consumer affirmatively assents, or opts in, to the payment of overdrafts for these transactions." 74 Fed. Reg. at 59033, Summary. The opt-in requirement is prospective. In the amendment, the Board specifically states that overdraft services to a debit card are governed by EFTA and not TILA and that the addition of overdraft services to an existing debit card does not constitute the application of a credit feature in violation of TILA's prohibition against the unsolicited issuance of credit cards. Specifically, the amendment states:

**Supplement I to Part 205–Official Staff Interpretations**

**Section 205.12–Relation to other Laws**

*12(a) Relation to Truth in Lending*

***********************

3. *Overdraft service.* The addition of an overdraft service, as that term is defined in §205.17(a), to an accepted access device does not constitute the addition of a credit feature subject to Regulation Z. Instead, the provisions of Regulation E apply, including the liability limitations (§ 205.6) and the requirement to obtain consumer consent to the service before any fees or charges for paying an overdraft may be assessed on the account (§ 205.17).

12 C.F.R. Pt. 205 Supp. I at cmt. 205.12(a)-3(2009), 74 Fed.Reg. at 59055.

Plaintiff acknowledges the amendments to Regulation E in 12 C.F.R. § 205.12, but argues that the amendments constitute new law that should not be given retroactive effect to Plaintiff's TILA claims. Contrary to Plaintiff's position, the amendments to Regulation E reflect the position that the Board has always taken that overdraft protection to debit cards is covered by Regulation E which implements the EFTA, rather than Regulation Z which implements TILA.

**VI. Section-by Section Analysis**

*Section 205.12      Relation to Other Laws*

*******************************

Currently, § 205.12(a)(1)(ii) states that the EFTA and Regulation E govern the 'issuance of an access device that permits credit extensions (under a preexisting agreement between a consumer and financial institution) only when the consumer's account is overdrawn or to maintain a specified minimum balance in the consumer's account.' As the Board stated in the original March 1979 final rule, this provision...was intended to clarify that Regulation E, rather than Regulation Z, applies to the issuance of 'access devices that are also credit cards solely by virtue of their capacity to access an existing overdraft credit line attached to the consumer's account.' (Citation omitted).

When the rule was originally adopted [March 1979], the primary means of covering overdrafts incurred in connection with EFTs was through an overdraft

6

line of credit linked to a debit card or other access device. Today, however, consumers are more likely to have these overdrafts covered by their institution's overdraft service, rather than by a separate overdraft line of credit. Commentators generally agreed with the proposed rule and commentary. Some consumer advocates, argued that overdraft services should be subject to TILA and Regulation Z.

74 Fed. Reg. at 59037.

Thus, as far back as 1979 the Board considered that Regulation E, rather than Regulation Z, applied to overdrafts. The only difference is that the original rule specifically covered overdraft <u>lines of credit</u>, whereas the amendment, reflecting changes in how consumers today have overdrafts covered, specifically refers to overdraft <u>services</u>. It was always the Board's intent for Regulation E to cover overdrafts in general. The new amendments merely reinforce existing law as stated by the Board in its amicus brief in <u>In re Washington Mutual Overdraft Protection Litigation</u>, that for those debit cards for which the only credit involves overdraft protection, the Board has determined that Regulation E, its rule implementing EFTA, rather than Regulation Z, applies to card issuance even where there is a preexisting agreement. See 12 C.F.R. § 205.12(a)(1)(ii).

Since Plaintiff's claim that the addition of an OPS to a debit card converts the card into a credit card in violation of TILA has been expressly rejected by the Board, Plaintiff's TILA claim in paragraph 41 of the Complaint must be dismissed.

With regard to Plaintiff's unauthorized offset claim in paragraph 42 of the Complaint, Plaintiff can only recover on this claim if the Court were to find that his debit card was transformed into a credit card. 15 U.S.C. § 1666h(a). Since the Court has already found that Plaintiff's debit card was never transformed into a credit card, that claim must also fail.

7

Because we will dismiss Plaintiff's only two federal claims (NBA and TILA), we will decline to exercise jurisdiction over Plaintiff's remaining state claims. (Pennsylvania Unfair Trade Practices and Consumer Protection Law and breach of contract).

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SERGIO VEGA SOTO | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 08-CV-1907 |
| | : | |
| BANK OF LANCASTER COUNTY, | : | |
| a/k/a BLC BANK, N.A. | : | |
| | : | |
| Defendant | : | |

# O R D E R

AND NOW, this 30th day of March, 2010, it is hereby ORDERED that the Motion of the Defendant to Dismiss [Doc. #8] is GRANTED.

It is further ORDERED that Counts I and II of the Complaint are DISMISSED WITH PREJUDICE.

It is further ORDERED that Count III of the Complaint is DISMISSED without prejudice.

It is further ORDERED that the Clerk is DIRECTED to mark this case closed for statistical purposes.

BY THE COURT:

*S/THOMAS M. GOLDEN*
THOMAS M. GOLDEN, J.