SERGIO VEGA SOTO, on his own          )
behalf and on behalf of all           )
other similarly situated,             )
                                      )
         Plaintiff                    )    Civil Action
                                      )    No. 08-cv-1907
         vs.                          )
                                      )
BANK OF LANCASTER                     )
COUNTY, also known as                 )
BLC Bank, N.A.,                       )
                                      )
         Defendant                    )

                          *    *    *

APPEARANCES:

                MARGARET W. SCHUETZ, ESQUIRE
                EVALYNN B. WELLING, ESQUIRE
                     On behalf of Plaintiff

                DARRYL J. MAY, ESQUIRE
                DANIEL J.T. MCKENNA, ESQUIRE
                     On behalf of Defendant

                          *    *    *

                    O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on the Motion for

Reconsideration filed April 13, 2010 by plaintiff Sergio Vega

Soto.

          The Brief of Defendant Bank of Lancaster County in

Opposition to Plaintiff's Motion for Reconsideration of the

Court's March 30, 2010 Order Dismissing the Case was filed

April 27, 2010.  Plaintiff filed his Reply Brief in Further
Support of Plaintiff's Motion for Reconsideration on May 4, 2010.

For the reasons articulated in this Opinion, I deny
plaintiff's Motion for Reconsideration.

## JURISDICTION

Jurisdiction in this case is based on federal question
jurisdiction pursuant to 28 U.S.C. § 1331.  This court has
supplemental jurisdiction over plaintiff's pendent state-law
claims.  See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because
the events giving rise to plaintiff's claims allegedly occurred
within Lancaster County, Pennsylvania, which is located within
this judicial district.

## PROCEDURAL HISTORY

On April 16, 2008, plaintiff filed a four-count Civil
Complaint in this matter as a putative class action on behalf of
all the customers of the Bank of Lancaster County.  As discussed
below, the Complaint alleged claims pursuant to the federal
National Bank Act[1] ("NBA") and Truth in Lending Act[2] ("TILA"), as
well as state-law claims for breach of contract and violation of

---

[1]    12 U.S.C. §§ 85-86.

[2]    15 U.S.C. §§ 1642 and 1666h(a).

-2-

the Pennsylvania Unfair Trade Practices and Consumer Protection Law[3] ("UTPCPL").

The case was assigned to my former colleague, United States District Judge Thomas M. Golden. On September 26, 2008, defendant moved to dismiss the Complaint in its entirety. Plaintiff responded on November 26, 2008, and defendant filed a reply brief on December 10, 2008 in further support of its motion to dismiss.

Judge Golden conducted oral argument on the motion on October 26, 2009 and took the matter under advisement. Subsequently, the parties filed supplemental briefs on the motion to dismiss.

On March 31, 2010, Judge Golden filed a Memorandum Opinion and Order dated March 30, 2010, granting defendant's motion to dismiss plaintiff's two federal claims for failure to state a claim.[4] He also declined to exercise jurisdiction over plaintiff's remaining state claims, and dismissed the case in its entirety. Judge Golden's Memorandum is summarized more fully below.

As noted above, plaintiff filed the within motion for reconsideration on April 13, 2010, and defendant filed a brief in

---

[3]     Act of November 24, 1976, P.L. 1166, § 1, as amended, 73 P.S. §§ 201-2 and 201-3.

[4]     Memorandum Opinion and Order of United States District Judge Thomas M. Golden dated March 30, 2010 and filed March 31, 2010 (Document 38)("Memorandum").

opposition on April 27, 2010. Plaintiff filed a reply brief in further support of his motion for reconsideration on May 4, 2010.

On August 11, 2010, after the untimely death of my former colleague Judge Golden, the case was reassigned to me. Hence this Opinion.

Plaintiff's Complaint

The claims in plaintiff's four-count Complaint arise from fees defendant applied to automated teller machine ("ATM") and debit card transactions made by plaintiff. Plaintiff alleges that he is an account holder with defendant.

Specifically, Count I alleges that defendant charged usurious interest on plaintiff's ATM and debit-card overdrafts pursuant to defendant's Overdraft Privilege Service ("OPS"), in violation of the federal NBA.

Count II asserts that defendant failed to seek plaintiff's permission before enrolling him in the OPS, failed to provide certain disclosures on the true cost of using the OPS, and improperly offset OPS fees against plaintiff's funds held on deposit, all in violation of the federal TILA.

Count III avers that defendant violated Pennsylvania's UPTCPL because the OPS constituted deceptive conduct which created a likelihood of confusion and misunderstanding.

Finally, Count IV alleges breach of contract under Pennsylvania contract law because defendant imposed the OPS on

-4-

plaintiff's deposit account without notice and without plaintiff's consent, in violation of the parties' Terms and Conditions on Deposit Accounts ("deposit agreement").

<u>District Court Memorandum Opinion</u>

Judge Golden's Memorandum Opinion and Order dismissed Counts I and II for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having dismissed the federal claims, he declined to exercise supplemental jurisdiction over the state-law claims in Count III and Count IV, and he dismissed the Complaint in its entirety.[5]

Accepting the allegations in plaintiff's complaint as true, as required by the standard of review for Rule 12(b)(6) motions, Judge Golden noted the following relevant facts.

A customer of defendant Bank of Lancaster County ("Bank") is automatically charged a fee of $35.00 every time the Bank pays for an overdrawn transaction, without first giving any notice to the customer that his account has insufficient funds. As a result of the application of the OPS to plaintiff's account, plaintiff was assessed $560.00 in "paid item fees" between September 11, 2007 and September 25, 2007. The Bank charged

_____

[5]     Although Judge Golden's accompanying Order appears to address only Counts I-III, it is clear from a review of the Memorandum Opinion that his intent was to dismiss all four counts. Moreover, as a result of the Memorandum Opinion and Order, the Clerk of Court marked the case closed for statistical purposes.

plaintiff such non-sufficient funds fees only in relation to his deposit account.[6]

In ruling on the motion to dismiss, Judge Golden considered, in addition to plaintiff's Complaint, an exhibit attached to defendant's motion to dismiss and an exhibit attached to defendant's reply brief.  Judge Golden considered these two documents based on his apparent conclusion that they were undisputedly authentic, and because plaintiff's claims were based upon them.  See Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Memorandum at 3, n.2.

The first document is the deposit agreement, which outlines the terms and conditions governing plaintiff's deposit account at defendant Bank.   The deposit agreement is Exhibit B to defendant's motion to dismiss.

The second document, which is Exhibit A to defendant's reply brief in support of the motion to dismiss, is entitled "Overdraft Privilege Service Policy" ("OPS policy").  The OPS policy accompanied a letter defendant sent to plaintiff when it enrolled his deposit account in the OPS on September 5, 2007.[7]

---

[6]     Memorandum at 1-2; see also Complaint, paragraphs 2, 11-13, 18-22.

[7]     Defendant notes in its reply brief in support of its underlying motion to dismiss that it included the September 5, 2007 letter as Exhibit C in the motion to dismiss, but that it inadvertently neglected to include the OPS policy which was sent with the letter.  (Reply Brief in Further Support of Motion of Bank of Lancaster County to Dismiss the Complaint, filed

(Footnote 7 continued):

Relevant to this motion, Judge Golden concluded that because the overdraft fees were charged pursuant to a deposit agreement (as opposed to a loan account or a credit account), the fees were not "interest" for purposes of the NBA claim set forth in Count I.  Therefore, he concluded that plaintiff could not establish that the fees were "interest" which exceeded the rate of interest permitted under Pennsylvania law, and therefore did not constitute a violation of the NBA.

In so concluding, Judge Golden rejected plaintiff's contention that the fees constitute interest because defendant charged an overdraft fee only when an item was paid by the bank, but did not charge a fee when the item was unpaid.  Instead, he noted that the fees arose pursuant to the terms of the deposit agreement and the Overdraft Privilege Service placed on this account by defendant Bank.

Judge Golden determined that the relevant inquiry was into the nature of the agreement, rather than whether defendant only charged the overdraft fee when it paid the item.  Because the Complaint alleges that plaintiff's account was a deposit account, the court concluded that the NBA did not apply, and

---

(Continuation of footnote 7):

December 10, 2008, page 4 n.3.)  The September 5, 2007 letter itself is not at issue for purposes of this motion.  Plaintiff does not dispute the authenticity of either the deposit agreement or the OPS policy.

granted defendant's motion to dismiss Count I for failure to
state a claim upon which relief can be granted.[8]

## STANDARD OF REVIEW

Rule 7.1(g) of the Rules of Civil Procedure for the
United States District Court for the Eastern District of
Pennsylvania permits a party to file a motion for
reconsideration.  The purpose of such motion

> is to correct manifest errors of law or fact or to
> present newly discovered evidence....Courts will
> reconsider an issue only when there has been an
> intervening change in the controlling law, when
> new evidence has become available, or when there
> is a need to correct a clear error or prevent
> manifest injustice.

---

[8]     As noted above in footnote 4, Judge Golden's Memorandum dismissed
all four counts in the Complaint.  Plaintiff seeks reconsideration only of the
dismissal of Count I, discussed above.  However, for the sake of completeness,
I will also summarize Judge Golden's analysis of Counts II through IV.

Count II alleged three claims under TILA.  The first claim alleged
that defendant failed to provide proper disclosure regarding the true cost of
using the OPS.  Judge Golden noted that plaintiff withdrew this first claim at
oral argument.  Accordingly, he did not address the merits of this claim.

Plaintiff's second TILA claim in Count II alleged that defendant
engaged in the unsolicited issuance of credit cards.  Judge Golden concluded
that the addition of overdraft protection services to a debit card does not
convert the card into a credit card, and therefore TILA did not apply.
Accordingly, Judge Golden dismissed that aspect of Count II for failure to
state a claim upon which relief can be granted.

Plaintiff's third claim pursuant to TILA in Count II alleged that
defendant violated TILA's prohibition on credit card issuers offsetting a
cardholder's debt against funds held on deposit with card issuers, without the
cardholder's prior consent.  Judge Golden concluded that plaintiff could only
recover on this third TILA claim if he succeeded on the second TILA claim,
i.e., if the debit card had been transformed into a credit card.  Because the
second TILA claim failed, Judge Golden concluded that it was necessary to
dismiss the third TILA claim.

Finally, because Judge Golden had dismissed all of plaintiff's
federal claims, he declined to exercise jurisdiction over the state-law claims
set forth in Count III and Count IV, and so he did not address the merits of
those claims.

<u>Burger King Corporation v. New England Hood and Duct Cleaning</u>
<u>Company</u>, 2000 U.S.Dist. LEXIS 1022, at *4-5 (E.D.Pa. Feb. 4,
2000) (Bechtle, S.J.) (internal quotations omitted).

Where the grounds for the motion for reconsideration
are to correct a manifest injustice, "the party must persuade the
court that not only was the prior decision wrong, 'but that it
was clearly wrong and that adherence to the decision would create
a manifest injustice.'" <u>Payne v. DeLuca</u>, 2006 U.S.Dist. LEXIS
89251, at *5-6 (W.D.Pa. Dec. 11, 2006) (Hardiman, J.) (quoting
<u>In re City of Philadelphia Litigation</u>, 158 F.3d 711, 718, 720-721
(3d Cir. 1998)).

<u>CONTENTIONS OF THE PARTIES</u>

<u>Contentions of Plaintiff</u>

In his motion for reconsideration, plaintiff
contends that Judge Golden erred in dismissing Count I, resulting
in a manifest injustice to plaintiff.  Specifically, plaintiff
avers that (1) the court should not have considered the documents
attached to defendant's motion to dismiss, (2) the court should
not have concluded that plaintiff's allegations were in conflict
with the contents of these documents, and (3) these documents
created a disputed issue of fact on which plaintiff should have
been permitted to offer proof.

More specifically, plaintiff contends that on a motion
to dismiss, the court should only consider the allegations

-9-

contained in the Complaint and any exhibits attached to the complaint.  Plaintiff acknowledges that a court may consider a defendant's exhibit, but only in those circumstances where plaintiff's claims are based on those documents.

However, plaintiff avers that his NBA claim is not based upon either the deposit agreement or the OPS policy, but rather on the Bank's actual practices.  That is, plaintiff asserts that the fees are "interest" within the scope of the NBA because the Bank's practices show it only charged overdraft fees when it actually paid an overdraft on a customer's deposit account.

Plaintiff further argues that even if the court's consideration of these documents were proper, it erroneously concluded that the contents of these documents contradict plaintiff's allegations in the Complaint.  Plaintiff contends that the relevant inquiry is whether defendant's practices show it charged an overdraft fee regardless of whether or not it paid the overdraft.

Plaintiff contends that the deposit agreement only shows that defendant has the right to impose such overdraft fees, but does not show its actual practices.  Therefore, plaintiff avers that the deposit agreement does not conflict with plaintiff's allegations that defendant chose not to impose these fees on overdrafts it refused to honor.

Additionally, plaintiff asserts that the OPS policy only shows that defendant intends to charge these fees without regard to whether it pays or returns the insufficient funds items. Plaintiff contends that because neither document shows the Bank's actual practices, neither document is relevant.

Similarly, plaintiff asserts that even if the court properly considered these documents, they create a disputed issue of fact as to how defendant operated the OPS and should not have been considered dispositive proof of defendant's actions and practices. Plaintiff avers that this issue cannot be resolved on a motion to dismiss, and that he should have the opportunity to prove at trial that defendant only charged an overdraft fee when an overdraft transaction was paid.

Thus, plaintiff asks this court to reconsider its decision on defendant's motion to dismiss because these errors create a manifest injustice.

<u>Contentions of Defendant</u>

Defendant contends that plaintiff has failed to identify any new evidence, a change in the law, or a clear error of law in Judge Golden's Memorandum Opinion and Order granting its motion to dismiss. Moreover, defendant contends that plaintiff is merely attempting to re-litigate arguments the court previously considered and properly rejected.

More specifically, defendant avers that plaintiff had the opportunity to argue to Judge Golden that it would be improper to consider the deposit agreement and the OPS policy, but failed to do so.  Defendant contends that on a motion for reconsideration, plaintiffs cannot assert arguments that they could have made before judgement but did not.  <u>Colonial Assurance Company v. The Mercantile and General Reassurance Company, LTD.</u>, 2004 WL 414078, at * 1 (E.D.Pa. Mar. 1, 2004) (Brody, J.). Defendant avers that it openly asked the court to rely on these documents in its responses, and that plaintiff acknowledged these requests but did not argue that it would be improper for the court to consider these documents.

Defendant further asserts that the Memorandum Opinion expressly addresses and appropriately rejects all of the contentions plaintiff raises in his motion for reconsideration. Defendant avers that the court correctly rejected plaintiff's contention about what constitutes interest under the NBA as well as plaintiff's claims that the documents did not contradict his allegations in the complaint.

Defendant also asserts that the court expressly addressed and rejected plaintiff's contention that his case is distinguishable from cases which hold that insufficient funds fees arising from deposit agreements are not interest. Therefore, defendant asserts that plaintiff is precluded from re-

litigating these issues because the court has already addressed them.

Finally, defendant contends that reconsideration is unwarranted because Judge Golden's decision was correct. According to defendant, it is well settled that insufficient funds fees arising from deposit accounts are not interest.

Moreover, defendant contends that under the NBA, it does not matter whether a bank charges an overdraft fee regardless of whether the item is paid or returned. Instead, the rule is that fees arising from deposit account services are not within the scope of "interest" as defined in 12 C.F.R. § 7.4001(a), a regulation promulgated by the Office of the Comptroller of the Currency ("OCC").

Defendant further avers that because plaintiff has cited no authority to the contrary, plaintiff has failed to state a claim under the NBA, and so the court correctly dismissed Count I.

DISCUSSION

Consideration of Documents

Plaintiff contends that Judge Golden committed clear error in dismissing his cause of action for usury under the NBA, resulting in a manifest injustice.

However, for the following reasons, I conclude that plaintiff has failed to meet the standard for reconsideration

because he has not shown that the court's actions were clearly wrong or that they resulted in a manifest injustice.  <u>Payne</u>, 2006 U.S.Dist. LEXIS 89251, at *5-6 (quoting <u>In re City of Philadelphia Litigation</u>, 158 F.3d at 720-721).  That is, in dismissing Count I, Judge Golden did not overlook any of the arguments plaintiff made, nor did he make any clear errors of law in concluding that plaintiff failed to state a claim under the NBA.

Plaintiff's first ground for reconsideration is that the court improperly considered two of defendant's exhibits on a motion to dismiss.  Ordinarily, a court considering a motion to dismiss only construes a plaintiff's complaint, exhibits attached to the complaint, and matters of public record.  <u>Pension Benefit</u>, 998 F.2d at 1196.

However, a court may consider an undisputedly authentic document attached by a defendant as an exhibit to the motion to dismiss if plaintiff's claims are based on the document.  <u>Id.</u> A document forms the basis of plaintiff's claim if the document is "integral to or [is] explicitly relied upon in the complaint." <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1426 (3d Cir. 1997)(internal quotation omitted); <u>see also</u> <u>Pryor v. National Collegiate Athletic Association</u>, 288 F.3d 548, 560 (3d Cir. 2002).

When a court considers matters outside the pleadings, the motion to dismiss ordinarily must be converted to a summary judgment motion because plaintiff has not had an adequate opportunity to respond to the extraneous evidence. Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc., 998 F.2d at 1196.

However, where documents are undisputedly authentic and plaintiff's complaint relies upon them, a plaintiff is presumably on notice of their contents and had the opportunity to refute the evidence. Burlington Coat Factory, 114 F.3d at 1426; Pension Benefit, 998 F.2d at 1196-1197. This exception to the general rule prevents a plaintiff with a legally deficient claim from surviving a motion to dismiss simply by failing to attach to the complaint a dispositive document upon which his claim relies. Pension Benefit, 998 F.2d at 1196.[9]

Here, Count I arises from fees charged to plaintiff's account with defendant Bank when his account contained insufficient funds to pay an item charged.[10] These fees originate from the terms of the deposit agreement and the Overdraft

---

[9]     In Burlington Coat Factory, the district court on a motion to dismiss considered an undisputedly authentic document which plaintiffs had not attached to their complaint. 114 F.3d at 1425-1426. The complaint in that case referenced figures contained in the document, although it lacked any direct quotes from, or a citation to, the document. Id. at 1426. Because plaintiffs' complaint referred to data in the document which was important to their claim, the United States Court of Appeals for the Third Circuit held it was reasonable for the district court to have considered the document, even though the complaint neither quoted from, nor cited, the document. Id.

[10]     Complaint, paragraphs 2, 21, 22, 31 and 35.

Privilege Service imposed on his account by defendant Bank, and so the deposit agreement and the Overdraft Privilege Service Policy documents are integral to plaintiff's claim.

Moreover, plaintiff's Complaint repeatedly refers to his "deposit account,"[11] his "account agreement contract,"[12] and the "Overdraft Privilege Policy".[13] The Complaint also explicitly refers to a letter sent to plaintiff on September 5, 2007, to which the OPS policy document was attached.[14]

Although the Complaint does not quote from, or cite, the deposit agreement or the OPS policy, its explicit references to these documents and their terms made it reasonable for Judge Golden to conclude that plaintiff's claims were based on them. Moreover, plaintiff does not contend that the documents are not authentic. See <u>Burlington Coat Factory</u>, 114 F.3d at 1426. Accordingly, I conclude that plaintiff's first ground for

---

[11]    Complaint, paragraphs 24, 25, 27 and 31.

[12]    Complaint, paragraphs 25, 27 and 31.

[13]    Complaint, paragraphs 24, 27 and 31. The Complaint also refers to the "Overdraft Protection Service Limit" in paragraph 11, the "Overdraft Privilege Service limit" in paragraphs 11, 13 and 17, and the "Overdraft Privilege Service" in nearly every paragraph of the Complaint.

[14]    Complaint, paragraph 20 and 31.

reconsideration fails because the court did not improperly consider the deposit agreement and the OPS policy.[15]

## Relevance of Documents

Plaintiff's second ground for reconsideration is that even if the court properly considered defendant's exhibits, those exhibits are irrelevant to Count I.  Plaintiff contends that the deposit agreement shows only that defendant Bank has the <u>right</u> to charge an overdraft fee every time an overdraft is presented, and the OPS policy shows only that defendant Bank <u>intended</u> to charge the fee for every overdraft.

Plaintiff alleges that these documents shed no light on defendant Bank's actual practices.  Therefore, plaintiff argues,

---

[15]     Additionally, I note that Count IV alleges a claim for breach of the deposit agreement, and therefore the deposit agreement should have been attached to the Complaint.  <u>See</u> <u>Pension Benefit</u>, 998 F.2d at 1196-1197.

I also note that plaintiff argues for the first time in his motion for reconsideration that the court improperly considered these two defense exhibits.  Plaintiff had the opportunity to raise this argument earlier because defendant's motion to dismiss requested the court to rely on these exhibits in order to dismiss Count I.  (Memorandum of Law in Support of Motion of Bank of Lancaster County to Dismiss the Complaint, filed Sept. 26, 2008, page 3 n.4 and 4 n.5.)

Plaintiff never challenged the appropriateness of considering these documents on a motion to dismiss.  Instead, plaintiff acknowledged defendant's request and only alleged that he was not challenging the contents of these documents.  (Surreply Memorandum of Law in Further Opposition to Defendant's Motion to Dismiss the Complaint (Document 25), at 3.)

A review of plaintiff's briefs in opposition to the motion to dismiss and the Notes of Testimony of the October 26, 2009 oral argument before Judge Golden reveals, and plaintiff does not dispute, that plaintiff did not previously raise the issue of whether the documents could be considered.  On a motion for reconsideration, plaintiff is precluded from raising arguments which previously could have been asserted.  <u>Equal Employment Opportunity Commission v. Dan Lepore & Sons Company</u>, 2004 U.S.Dist. LEXIS 4842, at *6 (E.D.Pa. Mar. 15, 2004) (Davis, J.) (internal quotation omitted).  Because plaintiff could have raised this argument earlier on this ground as well, he fails to meet the standard for granting a motion for reconsideration.

-17-

the documents do not refute his allegation in Count I that defendant Bank violated the NBA because it did not in fact charge the fee regardless of whether it paid overdrawn transactions.

I conclude that plaintiff's argument in this regard is an attempt to re-litigate arguments Judge Golden previously decided.  As discussed more fully below, Judge Golden did not err in concluding that the two exhibits were relevant to Count I, because overdraft fees arising from deposit accounts (instead of loan or credit accounts) do not constitute interest for the purposes of the NBA.  The documents are relevant to a determination that the fees were imposed on plaintiff's <u>deposit</u> account.

Moreover, as discussed more fully below, Judge Golden considered and rejected plaintiff's argument that the relevant inquiry was whether defendant Bank consistently imposed these fees in practice.  On reconsideration, plaintiff cannot re-litigate issues already fully considered by the court.  <u>See</u> <u>Blue</u> <u>Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.</u>, 246 F.Supp.2d 394, 398-399 (E.D.Pa. 2002) (Van Antwerpen, J.).

"The key to success on a motion [for reconsideration] is to show that there were facts or legal issues properly presented but overlooked by the court in its decision."  <u>Blue</u> <u>Mountain Mushroom</u>, 246 F.Supp.2d at 398-399 (internal quotation omitted).  Plaintiff has not demonstrated that Judge Golden

overlooked plaintiff's argument framing the relevant inquiry for stating a claim under the NBA on defendant Bank's practices. Therefore, I conclude plaintiff's second ground for reconsideration fails.

<u>Factual Dispute</u>

Finally, plaintiff's third ground for reconsideration is that the court improperly construed a disputed issue of fact (that is, how defendant Bank operated the Overdraft Privilege Service) in favor of defendant on a motion to dismiss, rather than accepting the facts alleged by plaintiff as true. This, too, is an attempt to re-litigate arguments Judge Golden previously considered and rejected. Plaintiff essentially contends that only defendant's practices were relevant, and because the documents shed no light on defendant's practices, the documents at most create a disputed issue of fact regarding what defendant's practices actually were.

However, plaintiff mischaracterizes Judge Golden's conclusion. Judge Golden did not hold that plaintiff failed to state a claim upon which relief can be granted based on a conclusion that defendant Bank actually charged the insufficient funds fee for every overdraft. Instead, the court held that factual averments about such practices were irrelevant because the fact that the fees were imposed pursuant to the terms of a deposit agreement was dispositive. In so determining, Judge

Golden did not commit a clear error of law for the following reasons.

Count I alleged that defendant Bank violated the NBA by charging a rate of interest higher than the rate allowed under Pennsylvania law.  12 U.S.C. § 85.  The regulation promulgated by the Office of the Comptroller of the Currency provides the definition for "interest," and the United States Supreme Court has held that the OCC is entitled to substantial deference in its interpretation of this term.  <u>Smiley v. Citibank (South Dakota) N.A.</u>, 517 U.S. 735, 739, 116 S.Ct. 1730, 1732-1733, 135 L.Ed.2d 25, 30-31 (1996).

The OCC regulation provides, in relevant part, that interest "includes any payment compensating a creditor or prospective creditor for an extension of credit."  12 C.F.R. § 7.4001(a).  In particular, the regulation provides a non-exhaustive list of examples of interest, including "creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds."  <u>Id.</u>

Thus, according to the OCC, one example of "interest" is "not sufficient funds fees," or "NSF fees."  However, the OCC has clarified that an overdraft fee charged by a bank in

connection with a deposit account is <u>not</u> an example of an NSF fee

for this purpose.[16]

Nonetheless, plaintiff argues that the proper

interpretation of the OCC's position is that even if the term

"NSF fees," as used in § 7.4001(a), does not encompass the fees

defendant Bank charged plaintiff, the OCC final rule does not

preclude such fees from the broader definition of "interest".[17]

Plaintiff supports this claim by noting that section 7.4001(a)

provides only a non-exhaustive list of types of interest.

However, plaintiff cites no authority, and I am aware of none,

holding that overdraft fees arising from a deposit agreement can

be "interest" for purposes of the NBA.

---

[16]    The OCC published a final rule with respect to section 7.4001(a)
clarifying the phrase "NSF fees."  The term needed clarification because the
same phrase has been used in two different contexts.  The OCC promulgated
section 7.4001(a) to codify its position that charges imposed by a credit card
bank on its customers who paid their loans via overdrawn checks were
"interest" under the NBA.  66 Fed.Reg. 34784, 34786 (Jul. 2, 2001).  Relevant
to this action, the other, and more common, use of the phrase occurs where a
bank charges its deposit-account holders a fee for overdrawn transactions.
66 Fed.Reg. 34786-34787.

        The OCC clarified "NSF fees" as used in the definition of
"interest" by adopting the former usage of the phrase.  66 Fed.Reg. 34786-
34787.  In connection with this conclusion, the OCC explicitly stated that
"[f]ees that a bank charges for its deposit account services – including
overdraft and returned check charges – are not covered by the term 'NSF fees'
as that term is used in § 7.4001(a)."  66 Fed.Reg. 34786.

        The OCC also explicitly considered whether § 7.4001(a) should be
amended so that the term "NSF fees" also includes "at least some portion of
the fee" imposed by a bank pursuant to a deposit agreement, but declined to do
so.  66 Fed.Reg. 34787.  The OCC stated it received a majority of comments
opposed to including as interest "any portion of the fee imposed by a national
bank when it pays an overdraft."  <u>Id.</u>  Given these objections, the OCC stated
"we have not amended § 7.4001(a) to address this issue."  <u>Id.</u>

[17]    Reply Brief in Further Support of Plaintiff's Motion for
Reconsideration, filed May 4, 2010, page 3.

On the contrary, the rule proposed by plaintiff contradicts the conclusions of courts which have considered the issue.  Although the United States Court of Appeals for the Third Circuit has not addressed this issue, district courts in other circuits have uniformly held that insufficient funds fees arising from a deposit agreement are not interest under the NBA.  See In re Washington Mutual Overdraft Protection Litigation, 2004 WL 5046210, at *5 (C.D.Cal. Apr. 26, 2004), aff'd in part, rev'd in part on other grounds, 201 Fed.Appx. 409 (9th Cir. 2006); Video Trax, Inc. v. NationsBank, N.A., 33 F.Supp.2d 1041, 1050 (S.D.Fla. 1998); Terrell v. Hancock Bank, 7 F.Supp.2d 812, 816 (S.D.Miss. 1998); Nicolas v. Deposit Guaranty National Bank, 182 F.R.D. 226, 231 (S.D.Miss. 1998).

Plaintiff instead proposes a different test based on whether the bank imposes fees regardless of whether it pays the overdrawn item.  This proposed test is apparently based on an amicus curiae brief filed by the OCC in Nicolas.  The Nicolas court stated that "the OCC takes the position that the imposition of an NSF fee without regard to whether NSF items are paid is not interest and does not violate the National Bank Act...." Nicolas, 182 F.R.D. at 231.

Plaintiff here apparently interprets the OCC's position in Nicolas to mean that an NSF fee is not interest if the bank actually imposes NSF fees both when it pays and when it refuses

to honor overdrawn transactions, but _is_ interest if the fee is charged only when the item is paid by the bank.  However, to whatever extent the OCC's position in Nicolas stands for such a proposition, I note that the 1998 Nicolas decision predates the OCC's subsequent clarification in 2001 that "NSF fees" do not include overdraft fees charged on a deposit account, as discussed above in footnote 15.

Moreover, notwithstanding plaintiff's characterization of the OCC's position in Nicolas, the Nicolas decision itself reveals the OCC's view that the distinction between a credit account and a deposit account is dispositive:

> The OCC contends that, because the NSF fee was not imposed in connection with a credit transaction, the fee is not interest as defined by the National Bank Act.  The Court agrees.  It is clear that the fee arises from the terms of the depository agreement.  As noted by the OCC, these kinds of charges are addressed by a separate federal regulation...§ 7.4002....

Nicolas, 182 F.R.D. at 231.

Therefore, and because the OCC's definition of interest is entitled to deference, Judge Golden did not clearly err in relying on the line of cases which conclude that insufficient funds fees, if charged on a deposit account, are not "interest" under the NBA.

Taking all well-pled factual allegations as true, as required for purposes of a motion to dismiss under Rule 12(b)(6), Judge Golden noted that the account at issue is a deposit

account.  Plaintiff does not dispute this characterization of his account and, indeed, this characterization is supported by the allegations in his Complaint.[18]

Nonetheless, plaintiff insists that the relevant inquiry is not into the nature of his account, but rather into the circumstances under which defendant Bank actually applied the fees to his account.  This contention was presented to, and rejected by, Judge Golden.  Moreover, although plaintiff may be correct that no relevant case law reflects the exact factual circumstances he alleges with regard to when defendant Bank charged such fees, Judge Golden did not clearly err in deferring to the OCC's final rule as well as the great weight of case law, all of which indicates that the nature of the account is the dispositive factor.  See Smiley, 517 U.S. at 739, 116 S.Ct. at 1732-1733, 135 L.Ed.2d at 30-31.  See also, e.g., Washington Mutual, 2004 WL 5046210, at *5.

Therefore, Judge Golden's dismissal of Count I was neither clear error of law, nor manifest injustice.  Plaintiff does not allege an intervening change in law or newly discovered evidence which would entitle him to reconsideration.  See Burger King, supra.  Accordingly, I deny the motion.

---

[18]    Complaint, paragraphs 24, 25, 27 and 31.

## CONCLUSION

For all the foregoing reasons, I deny plaintiff's Motion for Reconsideration.